**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KATIE MARIE HALLSTROM,

      Plaintiff,

v.                                                                                   No. 1:25-cv-0886 DLM

FRANK BISIGNANO,
Commissioner of Social Security,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      **THIS MATTER** is before the Court on Plaintiff Katie Marie Hallstrom's Motion to Reverse and Remand to Agency or Grant an Award of Immediate Benefits with Supporting Memorandum. (Doc. 15.) Having considered the record, submissions of counsel, and relevant law, the Court will **GRANT in part** the motion.

**I.      Procedural History**

      On October 8, 2017, Hallstrom protectively filed an application with the Social Security Administration for a period of disability and disability insurance benefits (DIB) under Title II and Part A of Title XIII of the Social Security Act (SSA). (Administrative Record (AR) at 157–58.[1]) Hallstrom alleged a disability onset date of September 29, 2012. (*Id.* at 157.) Her claims were denied initially, upon reconsideration, and again by Administrative Law Judge (ALJ) Jennifer Fellabaum on May 22, 2019. (*See id.* at 15–26, 65–87.) When the Appeals Council denied review, Hallstrom appealed, and the United States District Court for the District of New Mexico remanded the matter for further proceedings under Sentence Four of 42 U.S.C. § 405(g). (*See id.* at 1–6,

---

[1] Document 7 contains the sealed Administrative Record. (Docs. 7-1–21.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

1664–66.)

On remand, the Appeals Council directed the ALJ to further consider "the nature, severity, and limiting effects of [Hallstrom's] Hashimoto's Thyroiditis" and evaluate "the medical source opinion of Carole Mazurowski, Ph.D." (*See id.* at 1671 (citations omitted).) ALJ Fellabaum issued a second unfavorable decision on April 28, 2022. (*See id.* at 1565–82.) On appeal, the district court again issued a stipulated order remanding the claim under Sentence Four. (*See id.* at 2098–2100.)

The Appeals Council directed the ALJ to further consider Hallstrom's alleged symptoms under Social Security Ruling 16-3p, to include consideration of the third-party statements of Jennifer Reed and Anita Hallstrom; and to "rule on any objections to the vocational expert's testimony" in considering the occupations identified at step five. (*See id.* at 2105–07.) ALJ Michael Leppala held a hearing on March 11, 2024, at which Hallstrom and Kathleen Doehla, a vocational expert (VE), testified. (*See id.* at 2049–68.) ALJ Leppala issued the third unfavorable decision in this matter on July 10, 2024. (*See id.* at 2027–39.) Hallstrom appealed the decision, and her motion to remand is ready for review. (*See* Docs. 1; 15; 21; 24.)

## II.    The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of

2

impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and what she can still do despite her limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Leppala found that Hallstrom "last met the insured status requirements of the Social Security Act on December 31, 2014[,]" and "did not engage in substantial gainful activity during the period from her alleged onset date of September 29, 2012, through her date last insured [(DLI)] of December 31, 2014." (AR at 2030 (citing 20 C.F.R. §§ 404.1571–76).)

At Step Two, the ALJ concluded that "[t]hrough the [DLI], [Hallstrom] had the following severe impairments: Sheehan Syndrome—pituitary gland deficiency; anxiety disorder; cognitive disorder, not otherwise specified; and insomnia." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) He also found several other medical issues were non-severe, including a thyroid impairment. (*See id.*)

At Step Three, the ALJ found that through her DLI, Hallstrom "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 2031 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

At Step Four, the ALJ considered the evidence of record and found that, through her DLI, Hallstrom:

> had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) such that she is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is further limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling. [She] is limited to frequent exposure to pulmonary irritants, such as fumes, noxious odors, dusts, gases, and poorly ventilated areas and must avoid all exposure to hazards, such as unprotected heights, dangerous machinery, and moving machinery, and operation of a commercial motor vehicle. [She] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to jobs without fast-paced assembly line work.

(*Id.* at 2033.) Based on his review of the record and the testimony of the VE, ALJ Leppala found that through her DLI, "there were jobs that existed in significant numbers in the national economy that [Hallstrom] could have performed." (*Id.* at 2037 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The ALJ concluded that Hallstrom "was not under a disability . . . at any time from September 29, 2012, the alleged onset date, through December 31, 2014, the [DLI]." (*See id.* at 2038 (citing 20 C.F.R. § 404.1520(g)).)

## III.    Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds

for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.    Discussion

Hallstrom argues that remand is warranted because the ALJ (1) improperly assessed Hallstrom's subjective complaints; (2) improperly assessed third-party statements and the opinion of neuropsychologist Mazurowski; and (3) "failed to resolve a conflict between the General Educational Development ('GED') reasoning level three jobs[,] and the remaining jobs are unsupported by substantial evidence and contain legal error . . . ." (Doc. 15 at 3–4.)

### A.    The ALJ's evaluation of Hallstrom's eye pain is inadequate.

Hallstrom first argues that the ALJ improperly assessed her subjective complaints, resulting in a flawed RFC. (*See* Doc. 15 at 12.) She alleges a number of specific errors, but the Court focuses on one—whether the ALJ failed to adequately assess Hallstrom's complaints of eye pain as directed by the Appeals Council in its September 30, 2021 order. (*See id.* at 15–17; *see also* AR at 1671.)

To evaluate a claimant's subjective symptoms, an ALJ uses the two-part framework outlined in SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) and 20 C.F.R. § 416.929. The ALJ first determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the claimant's] symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(b). After finding such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(c). Relevant factors the ALJ may consider include: (1) the claimant's daily activities; (2) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (3) "[p]recipitating and aggravating factors"; (4) details about medications the claimant has taken; (5) other treatments used for symptom relief; (6) other measures the claimant employs for symptom relief; and (7) other symptom-related limitations or restrictions. *See* 20 C.F.R. § 416.929(c)(3). Hallstrom contends that the ALJ did not consider the second, third, fourth, and fifth factors. (*See* Doc. 15 at 17.)

The ALJ's summary is notable for the evidence it omits, particularly because this evidence is found in the records the Appeals Council cited in its order as relevant to the ALJ's further consideration. (*See id.* at 2034; *see also id.* at 1671 (citing AR at 1266, 344–45, 727, 740, 1258,

1261, 1284).) Critically, the ALJ failed to heed the Appeals Council's explicit direction to further consider medical evidence related to allegations that Hallstrom's eye pain "worsened with movement of her eyes and reading." (*See id.* at 1671 (citations omitted).)

With respect to "duration, frequency, and intensity," while the ALJ described Hallstrom's eye pain as intermittent or episodic, he failed to mention that the pain was "significant," had been ongoing for much of the relevant time period, and that she described her headaches as "throbbing." (*See id.* at 344, 368, 1266, 2034.) The ALJ did not discuss any precipitating or aggravating factors, but the record evidence shows that Hallstrom's pain worsened with movement—that is, when she looked up or to the left (*see id.* at 344, 1266), and also when she took herbal medication for her thyroid issues (*see id.* at 740). Moreover, although treatment records indicate that Hallstrom's headaches intensified when she read (*id.* at 1266), the ALJ found Hallstrom's reading noteworthy only to support his finding that her "daily activities suggest her conditions are not as limiting as alleged." (*See id.* at 2034.) The ALJ also completely omitted Hallstrom's complaints that she has difficulty seeing in dim light, at night, and that she is photophobic (bothered by bright light). (*See id.* at 344, 1266.)

With respect to medications and other treatments, the ALJ noted only that Hallstrom's headaches were well-controlled with medication. (*See id.* at 2034 (citing AR at 1302).) This 2018 record, however, post-dates the relevant time period, and neither the ALJ nor the Commissioner cite evidence to show that Hallstrom's headaches were well-controlled before her DLI. Moreover, the ALJ failed to outline other medications and treatments Hallstrom pursued to help remedy her eye problems. For example, records from the relevant period reflect that she took ibuprofen for eye pain (*see id.* at 1261, 1266), and that an ophthalmologist placed punctal plugs in 2013, which helped with redness and dryness but did not alleviate the pain behind her eyes (*see id.* at 1258).

The ALJ concluded his evaluation with the following summation: "A November 2014 treatment note indicates [Hallstrom] looked very good, and she is up and functioning. In January 2015, shortly after the [DLI], [Hallstrom] reported being '100 times better' than she was in October. Notably, treatment notes indicate [she] is overall doing well." (*See id.* at 2034 (citing AR at 375, 667–68, 3839).) The Court is dubious, however, that these records provide substantial evidence to support a finding that Hallstrom's eye pain was well-controlled. The note from November 2014 does not mention eye pain but rather focuses on her diagnosis of Sheehan's syndrome. (*See id.* at 667–68.) Given that the Appeals Council connected Hallstrom's eye pain with her Hashimoto's diagnosis, this record may not be the best indicator that the symptom had resolved.[2] (*See id.* at 1671.) Likewise, regarding the January 2015 observation that Hallstrom felt "100 times better[,]" the provider clarified that "[t]his primarily is along the mental and emotional standpoint." (*See id.* at 375.) Finally, the records the ALJ relies on to demonstrate that Hallstrom was "overall doing well" include that same November 2014 record (*see id.* at 2034 (citing AR at 668)) and a duplicate thereof (*see id.* at 2034 (citing AR at 3839)).

The Commissioner does not directly address Hallstrom's argument that the ALJ's 16-3p analysis was lacking. (*See* Doc. 21 at 13–14.) Instead, the Commissioner asserts that Hallstrom's position "does not withstand scrutiny when viewed 'in the context of the entire record' regarding her functioning" during the relevant time period. (Doc. 21 at 13 (citing *Wall*, 561 F.3d at 1063).) In *Wall*, the claimant alleged that the ALJ failed to develop the record with respect to certain cognitive and psychological disorders. *See Wall*, 561 F.3d at 1062–63. The Tenth Circuit found, though, that the claimant failed to argue "that a cognitive impairment contributed to [her] inability

---

[2] The Court notes, however, that medical providers connected Hallstrom's eye pain with Hashimoto's, Sheehan's, and Grave's Disease. (*See, e.g.*, AR at 315, 364, 368, 1270.)

to work[,]" affirmatively stating instead that she was prevented from working by migraines, neck and back pain, and diabetes. *See id.* And "[i]n any event," the Tenth Circuit found, "in the context of the entire record, [she] failed to present evidence of a cognitive impairment that was substantial on its face." *See id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)) ("recognizing that '[s]ubstantiality of evidence' depends upon the 'record taken as a whole'"). The *Wall* claimant pointed to only two records "as evidence that she [was] mentally disabled": an opinion from a psychologist who saw her only one time and whose opinion held "little weight[,]" and to a handwritten note from her primary physician, which related to a head injury outside of the relevant time period. *See id.* at 1063–64. Unlike in *Wall*, not only did Hallstrom "identif[y] Hashimoto's thyroiditis as a condition that limited her ability to work when she applied for disability benefits" (*see id.* at 1671), but she also provided multiple records to demonstrate that her ability to work may have been limited due to eye pain—records the Appeals Council outlined in its order remanding to the ALJ (*see id.*).

An ALJ is not required to consider the 16-3p factors in any sort of "formalistic way, but the substance must be there." *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (citing *Keyes-Zachary*, 695 F.3d at 1167). The Court finds the evaluation here fell short, particularly where the ALJ failed to heed the Appeals Council's direction to consider the allegations "of eye pain that worsened with movement of her eyes and reading." (*See* AR at 1671 (citations omitted).) *See also, e.g.*, *Yanni v. O'Malley*, No. 1:23-cv-0435 DHU/DLM, 2024 WL 3567016, at \*5 (D.N.M. July 29, 2024), *R&R adopted*, 2024 WL 3859055 (D.N.M. Aug. 19, 2024) (noting that when an ALJ "ignores a directive from the [Appeals Council[,] . . . the ALJ's decision [may or may not be] legally or factually insupportable under 42 U.S.C. § 405(g)") (citing *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020)). This matter will be remanded for further

consideration of the limitations Hallstrom's eye pain may have posed on her ability to work during the relevant period.[3]

### B.      The ALJ sufficiently assessed Dr. Mazurowski's opinion.

Hallstrom next argues that the ALJ inadequately assessed Dr. Mazurowski's opinion because he did not include all her opined limitations into the RFC. (*See* Doc. 15 at 18–20.) Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how he considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 2:22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted).

Notably, Hallstrom does not expressly argue that ALJ Leppala's supportability or consistency evaluations were inadequate. Instead, she argues that the ALJ's analysis was deficient because while he found it was "generally consistent with the record" and supported by objective

---

[3] Hallstrom also argues that the ALJ erred in failing to evaluate the third-party statements of Jennifer Reed and Anita Hallstrom as outlined in the Appeals Council's 2023 Order Remanding Case to ALJ. (*See* Doc. 15 at 17–18; *see also* AR at 2105–07.) The Appeals Council directed the ALJ to consider the statements within the context of the evaluation of Hallstrom's mental health symptoms under SSR 16-3p. (*See id.* at 2105–06.) The ALJ did not mention the third-party statements within the SSR 16-3p analysis but instead considered them in his discussion of medical opinions. (*See* AR at 2034–37.) On remand, the ALJ should further evaluate these opinions as directed in the Appeal Council's order.

10

findings, he concluded that the opinions were not couched in "vocationally relevant terms" and were, therefore, only partially persuasive. (*See* Doc. 15 at 19 (quoting AR at 2035).) Hallstrom contends that it was error to omit Mazurowski's opinions that (1) she "should use an effective calendar system" and take notes on important information; (2) she "should take time in the morning or evening to look over the notes to plan for her day;" (3) speakers should take care to be sure her attention is fully engaged and present information in small increments; and (4) speakers should allow her to repeat the information back. (*See id.* (quoting AR at 1671–72).)

Hallstrom argues that "[n]ote-taking . . . is an accommodation[,]" and the time needed "to look over her notes would result in off-task behavior beyond the ten percent allowable as testified by the [VE] at [the] hearing." (*See id.* at 19–20 (citing AR at 2065).) The Court disagrees with Hallstrom's interpretation of the VE's testimony: the Court has not located—nor does Hallstrom explicitly identify—testimony that Hallstrom would be off-task more than ten percent of the time to review notes. (*See id.*; *see also* AR at 2065–66.) Hallstrom also asserts that "the employer and coworkers would have to be specially trained to 'make sure her attention is fully engaged'" or to present information to her in small increments, accommodations that do not appear in the RFC. Yet the VE did not testify that these conditions would be preclusive to her ability to work. (*See* AR at 2066.) Regardless, Hallstrom does not support her arguments with citations to authority.

Hallstrom next complains that the ALJ discounted this portion of Mazurowski's opinion because it was not outlined in vocationally relevant terms. (*See id.* at 19.) The Court understands the ALJ's reasoning to mean that Mazurowski's opinion did not explain what Hallstrom was able to do despite the limitations and accommodations she outlined. *See Trujillo v. O'Malley*, No. 1:23-cv-0958 KWR/JFR, 2024 WL 3648313, at *17 (D.N.M. Aug. 5, 2024), *R&R adopted*, 2024 WL 3901390 (D.N.M. Aug. 22, 2024). "[T]he Court is mindful that '[t]he duty to perform a function-

by-function assessment belongs to the ALJ, not the medical source, and whether a medical source has provided function-by-function opinions"—or an opinion expressed in vocationally relevant terms—"is *not* one of the factors ALJs must consider in weighing that source's opinions.'" *Id.* (quoting *McGehee v. Saul*, No. 1:18-cv-1164 KK, 2019 WL 6219507, at *8 (D.N.M. Nov. 21, 2019)). "Courts, however, have allowed ALJs to consider it when weighing opinions." *Id.* (citing *Kristen R. v. Saul*, No. 19-cv-1089 JWL, 2020 WL 1433486, at *8 (D. Kan. Mar. 24. 2020)). Moreover, Hallstrom cites no authority that would prohibit an ALJ from considering whether an opinion is articulated in vocationally relevant terms. *See id.*

Even so, ALJ Leppala went beyond that statement and found that "Dr. Mazurowski's evaluation does not provide any support for a limitation greater than simple work." (AR at 2035.) The Court is able to follow the ALJ's reasoning and finds he applied the correct legal standards.

### C.      Hallstrom fails to show reversible error at Step Five.

In her final argument, Hallstrom contends that the ALJ erred at Step Five by: (1) evidencing his intent to deny her a fair hearing through "sloppy" errors; and (2) failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) as to the reasoning level of the jobs identified. (*See* Doc. 15 at 23–24.) The Court is unpersuaded by either argument.

First, Hallstrom maintains that the ALJ's errors in recounting the number of jobs available was sloppy and "illustrates that he had no intention of affording [her] a fair hearing." (*See id.* at 23.) The Court finds that these were mere scrivener's errors and do not warrant remand.

Next, the VE testified at the administrative hearing that an individual with Hallstrom's RFC could perform the position of cashier, which has a reasoning level of three.[4] (*See* AR at 2063.)

---

[4] The VE also identified the position of mail clerk, which also has a reasoning level of three, but the ALJ did not discuss this job in his decision. (*See* AR at 2038, 2063.) *See also Dictionary of Occupational Titles*, DOT 209.687-026, available at https://occupationalinfo.org/20/209687026.html (last visited July 1, 2026).

*See also Dictionary of Occupational Titles*, DOT 211.462-010, available at https://occupationalinfo.org/21/211462010.html (last visited July 1, 2026). Hallstrom contends that a reasoning level of three conflicts with the RFC's limitation to simple work. (*See* Doc. 15 at 23.) Hallstrom admits, though, that the ALJ "attempted to resolve the conflict" with respect to another position the VE offered, also with a reasoning level of three. (*See id.* (citing AR at 2064).) The ALJ asked if the VE believed that a position with a reasoning level of three is "consistent with [his] limitation to simple instructions and if" so, how. (*See* AR at 2064.) The VE responded, "[a]ll of these tasks you learn in 30 days or less." (*See id.*) Hallstrom argues that this evinces the VE's "misunderstanding of the DOT[,]" as the VE "was referring to [the] Specific Vocational Preparation" score, which is "the amount of lapsed time required by a typical worker to learn" how to perform a specific job. (*See* Doc. 15 at 23 (quoting *Dictionary of Occupational Titles, App'x C*, available at https://occupationalinfo.org/appendxc_1.html (last visited July 1, 2026)).) The Commissioner posits, however, that "the [VE's] testimony can easily be harmonized with the regulatory definition of unskilled work: simple work that 'a person can usually learn to do . . . in 30 days, and little specific vocational preparation and judgment are needed.'" (Doc. 21 at 17 (quoting 20 C.F.R. § 404.1568(a)).) Hallstrom did not address the Commissioner's position in her reply brief. (*See* Doc. 24 at 10–11 (discussing *Hackett v. Barnhart*, 395 F.3d 1168, 1175–76 (10th Cir. 2005)).) The Court finds the Commissioner's explanation is adequate and that the ALJ sufficiently resolved any conflict between the VE's testimony and the DOT.

The Court finds no error at Step Five and declines to remand on this basis.

## V.     Conclusion

The Court finds merit in Hallstrom's first point of contention and remands for further consideration of her eye pain and any limitations that might have caused on her ability to work

during the relevant time period. The Court declines to remand for an immediate award of benefits.

**IT IS HEREBY ORDERED** that Hallstrom's Motion to Reverse and Remand to Agency or Grant an Award of Immediate Benefits with Supporting Memorandum (Doc. 11) is **GRANTED in part** as outlined in this opinion.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*PRESIDING BY CONSENT*